**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KEVIN D. SCISM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-05-1174-F |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff, Mr. Kevin D. Scism, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Mr. Scism's application for disability insurance benefits and supplemental security income benefits.[1] The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded.[2]

---

[1]The Commissioner contends that Mr. Scism "does not argue that the denial of his request for Supplemental Security Income under Title XVI claim was incorrect." *See* Brief in Support of the Commissioner's Decision [Doc. #20] at 1. However, references made in the context of Mr Scism's briefing indicate otherwise. Moreover the identical analysis governs the denial of both types of benefits sought by Mr. Scism in the administrative proceedings below. Therefore, the Court rejects the Commissioner's contention as too narrow a reading of the issues presented for judicial review.

[2]Throughout the administrative proceedings, the record reflects Mr. Scism did not reside in the State of Oklahoma. However, the Complaint indicates that at the time this action was filed, Plaintiff was a resident of Jackson County, State of Oklahoma. Jackson County is located within

(continued...)

I.  **The Administrative Decision**

The Administrative Law Judge (ALJ) issued his decision on April 14, 2005, and found Mr. Scism not disabled. AR 20-26. Following the five-step sequential evaluation process, *see Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005), the ALJ found at step one that Mr. Scism had not engaged in substantial gainful activity since his alleged disability onset date of January 1, 2003. AR 21, 25. At step two, the ALJ determined that Mr. Scism has the following impairments and that these impairments are severe within the meaning of the Social Security regulations: "[coronary artery disease]; status post myocardial infarction; status post multiple angioplasty procedures with stenting; and polyarthralgia in the hips and knees." AR 22, 25. At step three, the ALJ determined Mr. Scism's severe impairments do not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22, 25.

The ALJ next determined that Mr. Scism has the residual functional capacity to do the following: "lift and/or pull up to 10 pounds frequently or occasionally; stand and/or walk for about 2 hours in an 8-hour workday, with an option to sit or stand at will; sit for 6 hours in an 8-hour workday; but with the following nonexertional limitations: work must be on a level surface; no complex tasks; only simple, repetitive tasks; only low stress work; no dust, fumes or gases; no temperature extremes; no work above the shoulder level; no repetitive use of the

---

²(...continued)
this judicial district. *See* 28 U.S.C. § 116(c). This judicial district, therefore, is a proper forum for this suit. *See* 28 U.S.C. § 1391(e) (detailing venue requirements for suit brought against federal agencies).

hands; and must be allowed to use a motorized scooter." AR 24, 25.  Based on this residual functional capacity, the ALJ determined at step four of the sequential evaluation process that Mr. Scism could not return to his past relevant work. AR 24, 25.  At step five the ALJ determined that Mr. Scism could perform a substantial number of unskilled jobs including: surveillance system monitor, information clerk and order clerk.  AR 24-25, 26.  The ALJ found that all of these jobs exist in significant numbers both in the local and national economy.  AR 24-25, 26.  Therefore, the ALJ determined Mr. Scism was not disabled.  AR 21, 25, 26.

Mr. Scism appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied his request for review, AR 7-9, making the ALJ's decision the final decision of the Commissioner.

## II.     Issues Presented for Judicial Review

Mr. Scism presents three issues for judicial review: (1) the ALJ failed to evaluate the medical evidence properly; (2) the ALJ failed to perform a proper step three analysis; and (3) the ALJ erred in his credibility analysis.

## III.    Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395

F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for the Commissioner's. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**IV.   Analysis**

Mr. Scism, who was 45 years of age at the time of the hearing before the ALJ, has a history of heart-related problems. In January 2003, Mr. Scism suffered a myocardial infarction, and a cardiac catheterization was performed. AR 188-192, 248. At that time, Mr. Scism's past medical history indicated "5 total coronary interventions, including two stents." AR 188.

In February 2003, Dr. Masilamani, a treating cardiologist, assessed Mr. Scism with "frequent angina occurring on a daily basis." AR 158. Dr. Masilamani stated that Mr. Scism does not suffer from shortness of breath and has "[n]o features of congestive heart failure." AR 158. Dr. Masilamani noted that "[f]or the time being, the patient will be unable to return to his job . . . as a security officer." AR 159.

On June 5, 2003, Dr. Masilamani noted that Mr. Scism "has been unable to return to work following his heart attack in January" and further noted that Mr Scism "work[ed] in law enforcement." AR 151, 210. In his clinical assessment, Dr. Masilamani noted that Mr. Scism "continues to have disabling anginal symptoms." AR 210. Mr. Scism reported using nitroglycerin "as often as six to ten times a day." AR 209.

On June 8, 2003, Dr. Masilamani consulted with another cardiologist, Dr. Vacek, and the doctors agreed that Mr. Scism demonstrated no objective evidence of ischemia. AR 152, 211. Dr Masilamani stated: "I explained [to Mr. Scism] that at this time we do not have objective evidence to substantiate that his symptoms are sec. to his CAD. It would therefore be difficult to certify that he has disabling angina." AR 211.

A repeat catheterization was performed on June 18, 2003. AR 145, 205, 207-208. The test results were reviewed by Dr. Peter Tadros who opined that it would be "a reasonable option to try to re-open the chronically occluded RCA percutaneously using a 'front-runner device.'" AR 203. On June 30, 2003, Dr. Donald Barnett provided the following opinion in a "To Whom It May Concern" letter:

> I am the primary care physician for Mr. Kevin Scism . . . . Mr. Scism is unable to work due to coronary artery disease and chest pain. He continues medical treatment and procedures for the coronary artery disease . . . .

AR 272.[3]

---

[3] Treatment notes indicate Dr. Barnett had last provided direct treatment to Mr. Scism nearly one year prior, in June 2002. AR 156. Dr. Barnett's opinion was in response to a telephone call from Mr. Scism pursuant to which Mr. Scism had requested that a statement be provided. AR 204.
(continued...)

In July 2003, a Residual Functional Capacity Assessment was performed and it was concluded that Mr. Scism could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. AR 231-240. The consultative examiner considered Dr. Barnett's opinion of June 2003, but determined his opinion should only be given partial consideration as it was "not totally consistent with objective medical evidence." AR 234. The consultative examiner also gave partial weight to Dr. Masilamani's statement that Plaintiff would not be able to return to his job "since this opinion was given during the immediate recovery phase of his MI." AR 234.

Dr. Masilamani's treatment records from July 28, 2003, provide the following synopsis of Mr. Scism's status:

> In brief, this is a pt. with persistent angina, functional class 3 following his MI in Jan. of this year. He has had several stress tests and a repeat heart cath 6/19/03, following which it was decided to consider further intervention if his viability study revealed significant ischemia. *This is indeed the case*. Dr. Courtenay approved referring the patient to KUMC for this.

AR 204 (emphasis added).

On September 10, 2003, Mr. Scism reported daily exertional angina and anthralgias in his hands, ankles and knees. He continued to be prescribed Nitroglycerin in addition to numerous other medications. AR 197.

---

³(...continued)
Mr. Scism needed the statement to demonstrate he had been off work since March "per the cardiologist's recommendation" due to his inability to "pay child support and for SRS who [sic] are providing some assistance." AR 204.

Another heart catheterization was performed in September 2003. AR 264. The catheterization showed that Mr. Scism had "3-vessel CAD with total occlusion of the RCA." As a result, Mr. Scism underwent further angioplasty and three stents were successfully placed. AR 264.

The record demonstrates that for a five-month period from December 2003 through April 2004, Mr. Scism missed a number of scheduled appointments with the cardiology clinic. AR 264, 267, 268. In August 2004, Mr. Scism was seen by Dr. Barnett and reported "intermittent chest pain with exertion." Mr Scism reported that his pain was "not getting worse" and that he could "live with it." AR 264.

On September 24, 2004, Mr. Scism was issued a motorized scooter related to his anthralgias, specifically his complaints of right knee pain. AR 263. In November 2004, Mr. Scism was prescribed an orthotic device for right knee pain. In addition, Mr. Scism was prescribed thermoskin arthritis gloves. AR 261.

On February 1, 2005, Mr. Scism requested that Dr. Barnett complete a medical source statement for a disability hearing set for February 28, 2005. Mr. Scism reported to Dr. Barnett that he had seen Dr. McBride and now uses a motorized scooter. He further reported that he was unable to do any physical activity. AR 271.

Dr. McBride (rather than Dr. Barnett) completed a Medical Source Statement (MSS) opining as to Mr. Scism's condition for the five-month period from September 2004 through February 2005. AR 273-274, 276. The MSS provides that Mr. Scism can frequently lift and/or carry less than 10 pounds; occasionally lift and/or carry 10 pounds; stand and/or walk

less than 1 hour; continuously stand and/or walk 10 minutes; sit a total of 8 hours and sit continuously a total of 2 hours. AR 273. The MSS further provides that Mr. Scism is not required to lie down during the normal workday unless he develops chest pain. He can never climb, balance, kneel or crouch but can occasionally stoop. He can frequently handle, finger and feel, occasionally reach and never crawl. AR 274.

### A.     Claim One: The ALJ's Evaluation of the Medical Evidence

Mr. Scism challenges the ALJ's evaluation of the opinions of two treating physicians, Dr. McBride and Dr. Barnett. Specifically, Mr. Scism contends the ALJ erred by not citing any evidence to contradict the opinions of these physicians. Mr. Scism also contends the ALJ ignored portions of Dr. Masilamani's notes "favorable to Scism's position, which stated Scism was unable to work." *See* Plaintiff's Brief at 6.

Tenth Circuit precedent provides for a sequential analysis of a treating physician opinion. First, the ALJ must determine whether the opinion of a treating physician qualifies for "controlling weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). A treating physician opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Id*. If the opinion is well-supported, the ALJ must further confirm that the opinion is well-supported by other substantial evidence in the record. *Id*. If either of these requirements are not satisfied, the opinion is not entitled to controlling weight. *Id*.

However, even where a treating physician opinion is not entitled to controlling weight, the ALJ must determine the weight, if any, to be given to the opinion using a number of

factors. *Id.*[4]  If the ALJ chooses to reject the treating physician opinion entirely, the ALJ must set forth specific legitimate reasons for doing so. *Id*.

The ALJ made the following findings with respect to Drs. McBride and Barnett:

> The undersigned has carefully examined the medical source statements completed by Alan McBride, D.O. and Donald Barnett, M.D., who are treating physicians from the VA hospital (Exhibits 5F, 6F, 7F, p. 2). The undersigned can only afford partial weight to these documents since the opinions therein are not supported by the evidence in the record as a whole, and because opinions regarding disability are reserved to the Commissioner.

AR 24. The ALJ's decision to accord less than controlling weight to the opinions of these doctors is supported by substantial evidence.

As noted, Dr Barnett provided his opinion that Mr. Scism was unable to work upon Mr. Scism's request and after not having directly treated Mr. Scism for nearly one year. Moreover, as the Commissioner notes, Dr. Barnett's opinion of disability is an issue reserved to the Commissioner. *See* Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *6 ("[t]reating source opinions on issues reserved to the Commissioner will never be given controlling weight"). *See also White v. Barnhart*, 287 F.3d 903, 906 (10th Cir. 2001) ("a treating physician's opinion is not dispositive on the ultimate issue of disability").

---

[4]Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1119 (quotation and citation omitted).

As there was no evidence to suggest Dr. Barnett's opinion was based upon clinical findings from his own treatment records and no other medical records reflect Mr. Scism's complete inability to work, the ALJ's findings sufficiently explain the weight and consideration given to Dr. Barnett's opinion. *Compare Balthrop v. Barnhart*, No. 04-7008, 2004 WL 2677697 at * 3 (10th Cir. Nov. 24, 2004) (unpublished op.)[5] (recognizing that "even opinions reserved to the Commissioner are still evidence that cannot simply be disregarded" but finding that the ALJ's conclusion reflected "an adequate consideration of the evidence in question"); *Whelchel v. Barnhart*, No. 02-7149, 2004 WL 613925 at * 4 (10th Cir. March 22, 2004) (unpublished op.) (finding the ALJ complied with the requirement of giving specific, legitimate reasons for rejecting treating physician's brief and conclusory opinion on the ultimate issue of disability).

As to Dr. McBride's MSS, the ALJ incorporated many of Dr. McBride's findings in his residual functional capacity determination. Thus, the ALJ did not wholly reject Dr. McBride's MSS.[6] The ALJ found other evidence of record demonstrated functional limitations less severe than those found by Dr. McBride (*see, e.g.,* Residual Functional Capacity Assessment AR 231-234), and, therefore, the ALJ's treatment of Dr. McBride's opinion is supported by substantial evidence.

---

[5] This and all other unpublished Tenth Circuit opinions referenced in this Report are cited for their persuasive authority in accordance with 10th Cir. R. 36.3(B).

[6] As noted by the Commissioner, the ALJ incorporated Dr. McBride's findings in his hypothetical questions to the vocational expert and the vocational expert identified jobs that could be performed by an individual with the limitations set forth in these findings. AR 333-338.

The ALJ did not specifically discuss the weight given to Dr. Masilamani's opinions. He did, however, discuss Dr. Masilamani's treatment records. AR 22. Dr. Masilamani did not render an opinion that Mr. Scism was disabled nor did he complete a medical source statement. Apparently, Mr. Scism relies upon treatment records in February 2003 in which Dr. Masilamani states that "for the time being" Mr. Scism could not return to his job as a security officer. AR 159. To the extent this statement constitutes a treating physician opinion, it was rendered one month after Mr. Scism's myocardial infarction and addressed only Mr. Scism's ability to return to his past relevant work as a security officer. The statement does not constitute an opinion that Mr. Scism would be precluded from performing any type of work.[7] For this reason, Dr. Masilamani's statements do not, as Mr. Scism contends, "give weight to the opinions of both Dr. Barnett and Dr. McBride." *See* Plaintiff's Brief at 6. In sum, therefore, Mr. Scism has failed to establish a violation of the treating physician rule and the ALJ's evaluation of the medical evidence is supported by substantial evidence.[8]

---

[7]Dr. Masilamani's treatment records from June 2003 contain a similar statement regarding Mr. Scism's inability to return to law enforcement work. AR 210.

[8]The Commissioner addresses a brief reference in Mr. Scism's brief to "mental" impairment in the context of his first claim for relief. This reference to mental impairment appears in the context of Mr. Scism's discussion of treatment records of his cardiologist, Dr. Masilamani. *See* Plaintiff's Brief at 6 ("The only way for the ALJ to discount the findings identified in Scism's medical evidence concerning his mental impairment would have been for the ALJ to have drawn improper medical conclusions on his own."). The reference to "mental" impairment, therefore, appears to be inadvertent, and the Court does not construe Plaintiff's brief as raising an issue relating to mental impairment.

## B. Claim Two: The ALJ's Step Three Analysis

At step three, the ALJ determined that "[t]he record does not contain medical findings obtained on clinical examination or special study which are the same as or equal to any of those listed in any subsection of the Listing of Impairments." AR 22. The ALJ further concluded that upon review of all the evidence "the claimant's severe impairment does not meet or equal the severity of any listing." AR 22.

Plaintiff contends the ALJ's finding is legally deficient pursuant to *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996) because the ALJ's summary conclusion at step three is beyond meaningful judicial review. *Id*. at 1009. In *Clifton*, the Tenth Circuit reversed and remanded for additional proceedings because "the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment." *Id*. at 1009. As the Court explained, "[s]uch a bare conclusion is beyond meaningful judicial review." *Id*.

Neither party has addressed a recent Tenth Circuit decision, *Fischer-Ross v. Barnhart*, *supra*, addressing the scope of the *Clifton* holding. As in *Clifton*, the ALJ's step three findings were summary in nature and did not identify the relevant listing or listings. The Tenth Circuit determined, however, that a harmless error analysis, based on the record as a whole, should be applied to the ALJ's conclusory findings so as to avoid "unwarranted remands needlessly prolonging administrative proceedings." *Id*., 431 F.3d at 730, 733-734. As the Court explained, "an ALJ's findings at other steps of the sequential process may

provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Id*. at 733.

In *Fischer-Ross*, the listing requirements for the impairments at issue required certain functional limitations to be present related to use of the extremities and postural capacities. The ALJ's RFC findings negated the existence of these functional limitations. In addition, the listing requirements for another impairment at issue (hay fever) required conditions far more serious than what was demonstrated by the claimant's medical record. *Id*. at 735. Thus, the Tenth Circuit concluded that "the ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three." Because "[n]o reasonable factfinder could conclude otherwise," the Tenth Circuit held that "any deficiency in the ALJ's articulation of his reasoning to support his step three analysis is harmless." *Id*. at 735.

Mr. Scism has not identified a particular listing in support of this claim of error.[9] However, the listings applicable to Mr. Scism's impairments are those listings related to the cardiovascular system, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing § 4.00 *et seq*.[10] Unlike

---

[9]The Commissioner contends Mr. Scism has waived this argument by failing to identify the listing he contends the ALJ failed to properly analyze. However, in *Fischer-Ross*, the Tenth Circuit noted that while the claimant bears the burden at step three to present evidence establishing his impairments meet or equal listed impairments, the claimant does not bear the burden of actually identifying any relevant listing. *Fischer-Ross*, 431 F.3d at 733 n.3. Rather, it is the ALJ who bears the burden to identify any relevant listing(s) in light of the evidence the claimant has produced. *Id*.

[10]The ALJ appears to have agreed as he makes reference to "Regulations No. 4." *See* AR 25, ¶ 4. The ALJ fails, however, to identify which of the multiple cardiovascular impairments listed under § 4.00 he considered at step three.

the circumstances presented in *Fischer-Ross*, in this case, aspects of the medical record do not indisputably establish that Mr. Scism does not meet or equal a listing.  And, the ALJ's residual functional capacity findings are not helpful because they deal with functional limitations which are not directly related to the requirements for the listings at § 4.00.

Without expressing an opinion as to which particular listing the ALJ should have considered, it appears, for example, that the medical evidence could support Listing 4.00(B)(2), cardiovascular impairment resulting from "[d]iscomfort or pain due to myocardial ischemia, with or without necrosis of heart muscle."  As the listing provides, "discomfort of myocardial ischemic origin (angina pectoris) is discomfort that is precipitated by effort and/or emotion and promptly relieved by sublingual nitroglycerin, other rapidly acting nitrates, or rest.  *Id.*, Listing 4.00(E)(3)(a).  Mr. Scism testified at the hearing before the ALJ that he uses Nitroglycerin to relieve chest pain.  He testified that he consumes approximately 100 tablets every 90 days.  AR 303-305.  His medical records similarly reflect this constant use of Nitroglycerin.  *See, e.g.,* AR 209.  In addition, his medical records demonstrate significant ischemia.  AR 204.

Because the ALJ made only conclusory findings at step three, it is impossible for this Court to conduct judicial review of those findings.  *Compare Dye v. Barnhart*, No. 05-5182, 2006 WL 1230690 at **3-4 (10th Cir. May 9, 2006) ( unpublished op.) (remanding for further step three findings concerning cardiac impairments and noting that unlike *Fischer-Ross*, the ALJ's other findings did not conclusively negate the possibility that the claimant met other listing requirements); *Malakowsky v. Barnhart*, No. 02-7066, 2003 WL 1565167 at *1 (10th

Cir. March 27, 2003) (unpublished op.) (remanding at step three where ALJ failed to specify the listings he reviewed, the evidence he considered or the reason for his step three determination and noting that court may not draw factual conclusions on behalf of the ALJ). Therefore, it is recommended that the case be remanded so that the ALJ can set forth specific findings at step three and his reasons for accepting or rejecting evidence with respect to Mr. Scism's heart (and other) impairments. The ALJ may need to recontact Mr. Scism's treating physicians or order additional testing so that the record is adequately developed in this regard.[11]

### C.  Claim Three: The ALJ's Credibility Analysis

The record demonstrates objective medical evidence of a pain-producing impairment and a loose nexus between the impairment and Mr. Scism's pain. Accordingly, the ALJ was required to evaluate Mr. Scism's subjective pain testimony and the other pertinent evidence before him. *See Luna v. Bowen*, 834 F.2d 161, 164-65 (10th Cir. 1987) (once a claimant has shown the existence of a pain-producing impairment and a loose nexus between such impairment and his subjective allegations of pain, the ALJ may not simply rely on objective medical data to determine whether the claimant suffers from disabling pain). *See also Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988) ("[T]he claimant is entitled to have

---

[11] While the Court's focus is on Mr. Scism's cardiac impairments, this is not to say that on remand, the ALJ should limit his step three analysis to the cardiac-related impairments. Rather, the ALJ should also address any further Listings as they may relate to the additional impairments the ALJ found to be severe.

his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence.").

At the hearing before the ALJ, Mr. Scism testified that he can sit between 20 and 30 minutes, stand 20 to 30 minutes, walk 50 yards and lift a gallon jug of milk. AR 315-317. He also testified he needs to lie down at least once every day due to chest pain. AR 316, 325-326. He takes Nitroglycerin tablets on a near daily basis, sometimes taking several tablets per day. AR 305. He testified he suffers daily from shortness of breath. AR 326-327. He uses a motor scooter to help ambulate as a result of right knee pain. AR 329-330.

The ALJ rejected Mr. Scism's testimony regarding his limitations, finding they were not supported by the objective medical evidence. Referencing the guidance of 20 C.F.R. § 404.1529(c), 20 C.F.R. § 416.929(c) and Social Security Ruling 96-7p, the ALJ stated his credibility findings as follows:

> After carefully considering all the evidence of record in light of the Luna credibility factors set forth above, the undersigned finds that the claimant's allegation of a complete inability to work is not credible. The record as a whole does not support a finding that the claimant's impairments are as limiting as he alleges.

AR 23. *See also* AR 25 ("The claimant's allegation of a complete inability to work is not credible.").

The ALJ summarized Mr. Scism's testimony at the hearing regarding his exertional limitations and rejected that testimony. However, the only specific evidence discussed by the ALJ to support his credibility determination is evidence of Mr. Scism's daily activities. The ALJ relied upon two reports headed "Activities of Daily Living" dated March 6, 2003,

*see* AR 119-125, and October 28, 2003, *see* AR 126-132, to support his findings. The ALJ did not hear any testimony as to Mr. Scism's activities of daily living despite rather significant treatment records related to Mr. Scism's chronic multi-joint pain that post-date the reports and seemingly contradict the level of Mr. Scism's daily activities as reflected in those reports. AR 261-264.

Aside from Mr. Scism's daily activities, the ALJ did not discuss any of the additional *Luna* factors identified in his decision, *see* AR 23, or comply with the requirement that he closely and affirmatively link his credibility conclusions to the evidence. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (discussing legal standards for assessing credibility and remanding case due to ALJ's failure to link credibility determination to evidence of record). Therefore, the ALJ's credibility analysis is not supported by substantial evidence. Consequently, the case must be remanded for further proceedings to assess Mr. Scism's credibility.

In sum, this case should be reversed and remanded. On remand, the ALJ must conduct a proper step three analysis by identifying the listing or listings under consideration and specifying the evidence considered in making the step three determination.[12] As set

---

[12]Effective April 13, 2006, the Social Security Administration revised the criteria of the Listing of Impairments used to evaluate cardiovascular impairments. *See* Revised Medical Criteria for Evaluating Cardiovascular Impairments, 71 Fed. Reg. 2312 (January 13, 2006) (to be codified at 20 C.F.R. Pt. 404, Subpt. P., App. 1). On remand, the revised criteria will govern further administrative proceedings. *See id* at 5 ("In those cases decided by a court after the effective date of the rules, where the court reverses the Commissioner's final decision and remands the case for further administrative proceedings, on remand, we will apply the provisions of these final rules to the entire period at issue in the claim.").

forth, depending on the listing criteria considered, the ALJ may need to recontact Mr. Scism's treating physicians or order other testing to adequately develop the record, though the Court expresses no opinion on whether such actions will be required. In addition, the ALJ must conduct a proper credibility analysis and make specific evidentiary findings with respect to Mr. Scism's subjective complaints taking into account all relevant *Luna* factors.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by July  18th , 2006. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  28th  day of June, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE